STATE OF CONNECTICUT *v.* MICHAEL DRUMMY

STATE OF CONNECTICUT *v.* SUZANNE ABRAMS

STATE OF CONNECTICUT *v.* JOHN SEVANICK

STATE OF CONNECTICUT *v.* ANN SORENSON
(5875)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued October 19, 1988—decision released May 2, 1989

*Elizabeth A. Curry,* with whom, on the brief, was *Susan Meredith,* for the appellants (defendants).

*John O'Meara,* deputy assistant state's attorney, with whom, on the brief, was *Elpedio N. Vitale,* for the appellee (state).

*Anne Simon* and *Peter Weiss* filed a brief for the Center for Constitutional Rights et al. as amici curiae.

SPALLONE, J. The defendants are appealing their convictions, after a jury trial, of the crime of criminal trespass in the first degree under General Statutes § 53a-107 (a) (1).[1]

---

[1] "[General Statutes] Sec. 53a-107. CRIMINAL TRESPASS IN THE FIRST DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person;

From the evidence introduced at trial, the jury could reasonably have found the following facts. On October 4, 1986, United States Army Staff Sergeant Betty A. Hill was stationed at the armed forces recruiting office located at 157 Orange Street in New Haven. Hill's primary duty at the time was to interview and recruit people to enlist in the United States Army. She normally worked from 8 a.m. to 5 p.m. daily. The premises were open one Saturday each month to accommodate prospective recruits who were unable to come in during the week. During working hours, the recruiting station was open to the general public. On Saturday, October 4, 1986, Hill arrived at the recruiting facility sometime between 11 and 11:30 a.m. Upon her arrival, she observed a group of people marching on the sidewalk outside the office. She entered the office. A short time later, she left on an errand, leaving the door unlocked. Upon her return, she discovered the defendants, Michael Drummy, Ann Sorenson, John Sevanick and Suzanne Abrams, inside the recruiting station. While Hill was away, the defendants, carrying a large wooden cross, had entered the facility, where they began to sing and pray. Hill observed the defendant Sorenson tearing up army recruiting posters. Sorenson had taken these posters down from the wall and replaced them with others. Hill asked the defendant Abrams, who was kneeling in front of the doorway to the facility, to leave. Abrams responded that the group "couldn't leave."

Failing to persuade the group to leave, Hill called the police. Officer Hildon Wright of the New Haven police department was the first to arrive, followed by Officer Theodis Fenn. Both officers saw a group of demonstrators outside the recruiting office and, upon

---

or (2) such person enters or remains in a building or any other premises in violation of a restraining order issued by the superior court.

"(b) Criminal trespass in the first degree is a class A misdemeanor."

entering, discovered the four defendants inside. After ascertaining that Hill wanted the defendants to leave, the officers asked them to do so. They refused. Wright then contacted his supervisor, Sergeant Edward Clough. When Clough arrived at the scene, he and the other officers met with Hill outside the premises. Hill explained that she was in charge of the recruiting office and that she wanted the defendants to leave. Hill and the officers entered the facility, and Clough identified himself to the defendants and explained that Hill wanted them to leave. Clough also warned the defendants that if they did not leave they would be arrested. The defendants did not respond to Clough's statements, but continued singing and praying. After a period of five to ten minutes, Clough again warned the defendants that if they did not leave the premises they would be subject to arrest. The defendants again failed to respond. Thereafter, they were arrested.

The defendants, appearing pro se, were tried to a jury and convicted of the crime of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1).[2] Upon conviction, each defendant was sentenced to a term of four months, execution of sentence suspended, and placed on probation for two years. This appeal, by all four defendants, followed.

The defendants claim that the trial court erred (1) in ruling that their proffered evidence regarding the defense of necessity was insufficient as a matter of law, (2) in unduly restricting their ability to present a defense, (3) in improperly instructing the jury on the charge of criminal trespass in the first degree, and (4) in making reference to the possibility of later appellate review of evidentiary rulings. We find these claims of error to be without merit.

---

[2] The defendant Ann Sorenson was also charged with and acquitted of the crime of criminal mischief in the third degree in violation of General Statutes § 53a-117.

The trial court correctly ruled that the defendants' proffered evidence regarding their proposed defense of necessity was insufficient as a matter of law. Prior to trial, the defendants filed a motion in limine with regard to their proposed defense of necessity and the admissibility of expert testimony on international law. The defendants sought an advance ruling as to whether they would be permitted to raise a defense of necessity and argue principles of international law as part of their defense. After reviewing the defendants' motion and supporting memorandum, and having heard the defendants' proffered evidence, the trial court initially denied the motion as being premature. Later, the court set aside its ruling and asked for further argument regarding the defense of necessity. Each defendant was permitted to present further extensive argument regarding the proposed defense of necessity and the applicability of international law. The defendants expressed their earnest belief that the policies of the United States with regard to the Republic of Nicaragua were in violation of international law. Essentially, the defendants argued that, if they did in fact commit a trespass at the recruiting station in New Haven, it was necessary in order to prevent the commission of "atrocities" in Nicaragua. The defendants also described other activities in which they had engaged in order to protest government policies regarding Nicaragua, asserting that these other efforts had proved "futile."

After hearing arguments, the trial court ruled that a defense of necessity was inappropriate under the facts and circumstances of this case. The court determined that the defendants' evidence, even if believed, failed to demonstrate any causal relationship between their commission of the crime of trespass at the recruiting office in New Haven and the prevention of perceived harms. Accordingly, the court concluded that the

defense of necessity was inapplicable under the facts and circumstances of this case and that any evidence relating to the defense offered by the defendants would be irrelevant. We agree with the trial court.

Our statutory definition of the defense of justification, General Statutes §§ 53a-16[3] and 53a-17,[4] does not include "necessity" as a recognized defense to a criminal charge. Indeed, our Supreme Court has indicated that the defense of necessity has no statutory basis in Connecticut. See *In re Juvenile Appeal*, 184 Conn. 157, 163–64, 439 A.2d 958 (1981) (noting that, although statutes in other jurisdictions and the model penal code explicitly define necessity, "[t]here appears to be no statutory definition in Connecticut for the defense of necessity").

At common law, the defense of necessity has been recognized under certain narrowly defined circumstances. See, e.g., *United States* v. *The Diana*, 74 U.S. (7 Wall.) 354, 19 L. Ed. 165 (1869). The defense rests upon the proposition that "there may be circumstances where the value protected by the law is, as a matter of public policy, eclipsed by a superceding value which makes it inappropriate and unjust to apply the usual criminal rule." *Commonwealth* v. *Brugmann,* 13 Mass. App. 373, 377, 433 N.E.2d 457 (1982); see also W.

---

[3] "[General Statutes] Sec. 53a-16. JUSTIFICATION AS DEFENSE. In any prosecution for an offense, justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense."

[4] "[General Statutes] Sec. 53a-17. CONDUCT REQUIRED OR AUTHORIZED BY LAW OR JUDICIAL DECREE. Unless inconsistent with any provision of this chapter defining justifiable use of physical force, or with any other provision of law, conduct which would otherwise constitute an offense is justifiable when such conduct is required or authorized by a provision of law or by a judicial decree, including but not limited to (1) laws defining duties and functions of public servants, (2) laws defining duties of private citizens to assist public servants in the performance of certain of their functions, (3) laws governing the execution of legal process, (4) laws governing the military services and the conduct of war, and (5) judgments and orders of courts."

LaFave & A. Scott, Substantive Criminal Law (1986), § 5.4, p. 629. The defense of necessity "traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." *United States* v. *Bailey,* 444 U.S. 394, 410, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980). The defense, however, "deals with obvious and generally recognized harms, not with those which are debatable and, indeed, the subject of legislation and government regulation." *Commonwealth* v. *Averill,* 12 Mass. App. 260, 262–63, 423 N.E.2d 6 (1981), citing *State* v. *Dorsey,* 118 N.H. 844, 846–47, 395 A.2d 855 (1978).

Connecticut case law is devoid of any definition of the defense of necessity. Other jurisdictions recognizing the defense of necessity generally require a showing by the defendant: "(a) that there is no third and legal alternative available, (b) that the harm to be prevented [was] imminent, and (c) that a direct causal relationship [may] be reasonably anticipated to exist between defendant's action and the avoidance of harm." *United States* v. *Seward,* 687 F.2d 1270, 1275 (10th Cir. 1982), cert. denied, 459 U.S. 1147, 103 S. Ct. 789, 74 L. Ed. 2d 995 (1983); *State* v. *Marley,* 54 Haw. 450, 472, 509 P.2d 1095 (1973). In this case, the trial court determined that other legal alternatives were available to the defendants and that the defendants' evidence, even if believed, failed to establish a causal relationship between their commission of the crime of trespass at the recruiting station in New Haven and the prevention of the perceived harms.

The defendants contend that the court erred in refusing to permit them to present evidence to the jury regarding a defense of necessity and in refusing to instruct the jury regarding that defense. This claim is without merit. Where an offer of proof is made with respect to a defense and it is clear from the offer of proof that the defense is insufficient as a matter of law,

the trial court may properly refuse to permit evidence of the defense to be submitted to the jury. See *United States* v. *Bailey,* supra, 416; *State* v. *Valeriano,* 191 Conn. 659, 663, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984). In this case, the evidence offered by the defendants, even if believed, was insufficient as a matter of law to establish a defense of necessity. The trial court properly excluded from the jury's consideration evidence offered by the defendants concerning necessity, including information on principles of international law that was offered as part of the defense of necessity.

The defendants next argue that the trial court, by excluding evidence of their mental states, prevented them from asserting a valid defense to the charges against them. This claim, too, is without merit. Our review of the transcript and the trial court's charge to the jury reveals that the court imposed no restriction that would prevent the defendants from presenting relevant evidence supporting any valid defenses they might raise. The testimony excluded by the court concerned the "license" or "privilege" relied on by the defendants, i.e., that they were acting out of a duty or necessity to prevent violations of international law. Because the court had previously ruled that this defense was inappropriate, evidence that was relevant only for the purpose of establishing the defense was properly excluded. We will not intrude on the trial court's exercise of its broad discretion when ruling on questions of relevancy unless a clear abuse of discretion is manifest. *State* v. *DeForge,* 194 Conn. 392, 396, 480 A.2d 547 (1984). No such abuse is shown in the record.

In their third claim of error, the defendants challenge the trial court's instructions to the jury on the charge of criminal trespass in the first degree. The defendants argue that the court misrepresented the requirements for conviction under General Statutes §§ 53a-107 and

53a-110 by instructing the jury that the defendants could "reasonably or passionately" believe they were "privileged" to remain in the recruitment center and still be found guilty of criminal trespass. "A party is not entitled to a charge which is beyond criticism in every particular. *State* v. *Harman,* 198 Conn. 124, 134, 502 A.2d 381 (1985). The charge should not be 'critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case.' *State* v. *Shindell,* 195 Conn. 128, 143, 486 A.2d 637 (1985). [The] court must determine whether in light of the charge as a whole it is reasonably possible that the jury was misled. *State* v. *Jones,* 193 Conn. 70, 90, 475 A.2d 1087 (1984)." *State* v. *Laracuente,* 205 Conn. 515, 524, 534 A.2d 882 (1987), cert. denied     U.S.    , 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988).

Our reading of the trial court's charge to the jury discloses no error on the part of the trial court. The charge, taken as a whole, fully instructs the jury regarding the elements constituting the crimes charged and fully explains the legitimate statutory defense available. We conclude that it was not reasonably possible that the jury was misled by the challenged instructions.

The defendants' final claim is that the trial court erred when it made reference to the availability of appellate review of its evidentiary rulings. Immediately following the defendant Drummy's closing argument, the court remarked to the jury that there was certain evidence that the defendants had been precluded from presenting due to the court's rulings. The court explained to the jury that any mistaken rulings it had made could be addressed in a different tribunal. The defendant failed to object to that remark. This court need not consider a claim of error unless it was distinctly raised at trial. Practice Book § 4185. We decline the defendants'

invitation to review their claim under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), because the defendants have failed to articulate a claim, adequately supported by the record, that they were clearly deprived of a fundamental constitutional right and a fair trial. Id.

There is no error.

In this opinion the other judges concurred.

