STATE OF CONNECTICUT *v.* RAY MESSLER
(7428)

BORDEN, STOUGHTON and NORCOTT, Js.

---

[2] Our disposition of the defendants' second claim of error makes it unnecessary for us to review their final claim.

Argued April 20—decision released August 22, 1989

*Kimball Haines Hunt,* for the appellant (defendant).

*Vincent J. Dooley,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Roseanne Wagner,* deputy assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a court trial, of speeding in violation of General Statutes § 14-219 (c). The dispositive issue is whether the court erred in failing to consider the defendant's defense of necessity. We find error.

The following facts either were found by the court or were undisputed. The defendant was driving east on Route 20 in East Granby at a point where there is a single lane in each direction. The defendant was in a pack of vehicles. When the road widened into multiple lanes, the defendant pulled into the left lane to pass the two cars ahead of him. At the same time, state trooper Peter Strniste, who was patrolling this stretch of highway, gave chase to a speeding vehicle headed east on Route 20. The speeding vehicle passed the pack of vehicles of which the defendant was a part, moments before the defendant pulled into the left lane. Strniste,

still in pursuit of the speeding vehicle, closed with the defendant in the left lane and signaled with his lights to allow him to go by. Until he signaled to go by, Strniste noticed nothing objectionable about the defendant's driving. On seeing Strniste's cruiser, the defendant increased his speed in order to pass the cars in the right lane and to make way for Strniste. In doing so, the defendant exceeded a speed of seventy miles per hour. After passing the two cars in the right lane, the defendant moved into that lane. Strniste, having lost sight of his original quarry, stopped the defendant and charged him with speeding.

The court found the defendant guilty of one count of speeding, in violation of General Statutes § 14-219 (c) (1).[1] From this judgment the defendant has appealed.

The defendant claims that the court erred in refusing to consider his proffered justification defense when he had presented evidence supporting such a defense. We agree.

As an initial proposition, we agree with the holding of the Appellate Division of the Circuit Court in *State v. Weller,* 4 Conn. Cir. Ct. 267, 269, 230 A.2d 242 (1967), that "[t]he speeding statute creates a crime which is malum prohibitum. 'Crimes are either mala in se or mala prohibita, and intent is a necessary element. In crimes which are mala in se, a specific intent, a wrongful intent, to commit the crime must be established, but in crimes that are mala prohibita the only intent requisite to a conviction is the intent or purpose to do the prohibited act.' *State v. Binders,* 24 Conn. Sup. 214, 216 [189 A.2d 408 (1962)]." See also *State v. Perez,* 181 Conn. 299, 316, 435 A.2d 334 (1980).

---

[1] General Statutes § 14-219 (c) (1) provides in pertinent part: "Any person who . . . operates a motor vehicle (1) on a multiple lane, limited access highway at a rate of speed greater than seventy miles per hour . . . shall be fined not less than one hundred dollars nor more than one hundred fifty dollars . . . ."

The trial court found that the defendant violated the speeding statute because he intended to operate his car at an illegal speed. The act of driving the car at an excessive speed creates a permissible inference that the defendant had the intent necessary to do the prohibited act. See *Danzell* v. *Smith,* 150 Conn. 35, 39, 184 A.2d 53 (1962). The trial court further held, however, that the defendant's avowed purpose in speeding, namely, to clear the police cruiser's path in response to Strniste's signal, was "of no consequence." In making this ruling, the trial court specifically relied upon the proposition set out in *State* v. *Zullo,* 4 Conn. Cir. Ct. 573, 577–78, 236 A.2d 718 (1967), that a defendant's intent to do an act proscribed as a malum prohibitum crime cannot be negated by the excuse that the defendant was pursuing a socially desirable end, such as facilitating a state trooper's performance of his law enforcement duties. To the extent that the trial court's ruling means that the defendant's purpose in speeding is irrelevant to the issue of the defendant's intent to operate his car at the speed in question, we agree. *State* v. *Weller,* supra, 269 (only intent requisite to speeding conviction is intention to do prohibited act). It is clear from the record, however, that the defendant's defense at trial was not concerned with the issue of his intent to drive at the speed in question, but was an attempt to provide a legally recognized justification for his action.[2]

The defendant's theory of defense, both in the trial court and in this court, is difficult to categorize within a single type, such as entrapment, duress, justification or necessity. It is apparent, however, both from the

---

[2] The defendant, during oral argument on his motion for judgment of acquittal, admitted that he did "not contest" that he exceeded the speed limit. He also "agree[d] with the state . . . that the state need [not] prove specific intent" to convict a defendant of a speeding violation. Rather, he claimed that "in order to conform to this officer's identified need to get by him, he had to speed to get out of the lane."

transcript of the trial, from the defendant's brief and from his oral argument in this court, that his theory of defense is most readily categorized as a necessity defense. Although at one point during oral argument on his motion for judgment of acquittal the defendant characterized his defense as "entrapment," he consistently couched the argument for his defense in terms of a choice of evils, likening the situation he faced to what he refers to as a "Hobson's choice."[3] By portraying the choice faced by the defendant as being between the conflicting evils of exceeding the speed limit and inhibiting a police officer in the performance of his law enforcement duties, the defendant attempted to present what is essentially a necessity defense.

"[T]he defense of necessity has no statutory basis in Connecticut. *In re Juvenile Appeal,* 184 Conn. 157, 163–64, 439 A.2d 958 (1981)." *State* v. *Drummy,* 18 Conn. App. 303, 308, 557 A.2d 574 (1989). That does not mean, however, that it may not apply in a given case. Chapter 951 of the General Statutes; General Statutes §§ 53a-4 through 53a-23; governs the general principles of statutory construction and criminal liability applicable to the penal code. General Statutes § 53a-4 provides: "The provision of this chapter shall not be construed as precluding any court from recognizing other principles of criminal liability or other defenses not inconsistent with such provisions." Thus, the common law necessity defense is available to a defendant to the extent that it is not inconsistent with the principles of criminal liability or defenses estab-

---

[3] We note that the defendant's use of the term "Hobson's choice" as a synonym for a choice of evils is inaccurate. The term is derived from the practice of Thomas Hobson (d. 1631), an English liveryman, of requiring each customer to take the next available horse. Thus, in modern usage a Hobson's choice is "[a]n apparent freedom of choice with no real alternative." American Heritage Dictionary of the English Language, New College Edition, 626. The defendant does not claim that he was required to take the next available horse, but that he had to choose between two nags.

lished in chapter 951. We conclude that under the particular facts of this case, the necessity defense is not precluded by the penal code.

"At common law, the defense of necessity has been recognized under certain narrowly defined circumstances. See, e.g., *United States* v. *The Diana,* 74 U.S. (7 Wall.) 354, 19 L. Ed. 165 (1869). The defense rests upon the proposition that 'there may be circumstances where the value protected by the law is, as a matter of public policy, eclipsed by a superseding value which makes it inappropriate and unjust to apply the usual criminal rule.' *Commonwealth* v. *Brugmann,* 13 Mass. App. 373, 377, 433 N.E.2d 457 (1982); see also W. LaFave & A. Scott, Substantive Criminal Law (1986) § 5.4, p. 629." *State* v. *Drummy,* supra, 308–309. The necessity defense " 'traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils.' *United States* v. *Bailey,* 444 U.S. 394, 410, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980)." *State* v. *Drummy,* supra, 309. "[M]odern cases have tended to blur the distinction between duress and necessity." *United States* v. *Bailey,* supra; *In re Juvenile Appeal,* supra.[4] "More significantly, most . . . of the modern recodifications (fol-

---

[4] Traditionally, the defense of duress excused " 'criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which caused the actor to engage in conduct violating the literal terms of the criminal law.' " *In re Juvenile Appeal,* 184 Conn. 157, 163, 439 A.2d 958 (1981), quoting *United States* v. *Bailey,* 444 U.S. 394, 409–10, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980). While duress covered the situation where the coercion had its source in the actions of other human beings, in the defense of necessity, or choice of evils, the source of the coercion was physical forces beyond the actor's control. Id. This dichotomy has eroded in recent years as courts and other authorities have recognized that " '[t]o restrict the scope of the lesser evils defense to instances of threats from natural forces would be to remove the justification on grounds wholly irrelevant to the question of the actor's conduct producing a net benefit.' 2 P. Robinson, Criminal Law Defenses § 124 (e) (1) (1984)." W. LaFave & A. Scott, Substantive Criminal Procedure (1986) § 5.4, p. 628 n.8.

lowing the Model Penal Code in this respect) contain a broader choice-of-evils defense which is not limited to any particular source of danger." W. LaFave & A. Scott, supra, 628. The defense " 'deals with obvious and generally recognized harms, not with those which are debatable and, indeed, the subject of legislation and government regulation.' " *State* v. *Drummy,* supra.

This court, in *State* v. *Drummy,* supra, recently adopted a definition of necessity that requires a showing by the defendant: " '(a) that there is no third and legal alternative available, (b) that the harm to be prevented [was] imminent, and (c) that a direct causal relationship [may] be reasonably anticipated to exist between the defendant's action and the avoidance of harm.' *United States* v. *Seward,* 687 F.2d 1270, 1275 (10th Cir. 1982), cert. denied, 459 U.S. 1147, 103 S. Ct. 789, 74 L. Ed. 2d 995 (1983)."

The trial court erred in holding, pursuant to *State* v. *Zullo,* supra, that because the only intent necessary for conviction of a malum prohibitum crime is the intent to do the prohibited act; id., 578; there can be no justification defense to such crimes. Whether in a particular case a necessity defense applies does not turn on whether the defendant had the intent to do the prohibited act. "The rationale of the necessity defense is not that a person, when faced with the pressure of circumstances . . . lacks the mental element which the crime in question requires. Rather, it is this reason of public policy: the law ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law." W. LaFave & A. Scott, supra, 629. Thus, the question of whether the defendant had the requisite intent to commit the crime is irrelevant to a determination of whether the defendant has successfully interposed a necessity defense.

From the transcript it is clear that the defendant's case at trial and his cross-examination of the state's witness were geared toward interposing and establishing a justification defense based on the necessity doctrine. "When a defendant . . . seeks to excuse or justify [the] commission [of a crime] so that legal responsibility for the act is avoided, a theory of defense charge is appropriate." A defendant must, however, assert a recognized legal defense before such a charge will become obligatory. *State* v. *Rosado,* 178 Conn. 704, 707, 425 A.2d 108 (1979).[5] In the context of a court trial, this rule obliges the trier of fact to consider the defendant's theory of defense, if the court finds that the defendant has produced evidence indicating the availability of a defense recognized under Connecticut law. See id., 707–708.

We hold that the defendant presented sufficient evidence to indicate the availability of the legally recognized necessity defense. We decline to decide, however, whether that evidence relieved him from criminal responsibility in this case. That issue is for the trial

---

[5] *State* v. *Rosado,* 178 Conn. 704, 425 A.2d 108 (1979), was concerned specifically with defenses set out and defined in chapter 951 of the penal code, namely, General Statutes § 53a-6, ignorance or mistake; § 53a-7, intoxication; § 53a-10, renunciation of criminal purpose; § 53a-13, insanity; § 53a-14, duress; § 53a-15, entrapment; § 53a-16, justification, as defined in General Statutes §§ 53a-17 through 53a-23; §§ 53a-16a and 53a-16b, use of firearms; and § 53a-48, renunciation of criminal purpose in a conspiracy charge. The *Rosado* court held that "only when evidence indicating the availability of one of the above legally recognized defenses is placed before a jury is a defendant *entitled* as a matter of law to a theory of defense instruction." (Emphasis in original.) Id., 708. The court was silent as to whether other common law defenses whose vitality was preserved by § 53a-4 would come under the rule in *Rosado.* The plain language of that statute, however, indicates that, to the extent that they are consistent with other provisions of chapter 951 of the penal code, common law defenses preserved under § 53a-4 are to be available to defendants to the same extent as the statutory defenses set out in chapter 951. It is therefore appropriate, and consistent with *Rosado,* that common law defenses preserved under § 53a-4 would come under the *Rosado* rule.

court to determine in the first instance, by applying the proper legal principles as articulated in *State* v. *Drummy,* supra.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.

