STATE OF CONNECTICUT *v.* ALTON WOODS
(8621)

DUPONT, C. J., DALY and FOTI, Js.

Argued October 2—decision released December 11, 1990

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Bradford J. Ward,* senior assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, after a jury trial, of escape from custody in violation of General Statutes § 53a-171. The defendant claims that the trial court improperly refused to charge the jury on the defense of necessity and failed to instruct the jury on an element of escape from custody. We disagree and affirm the trial court's judgment.

The jury could have reasonably found the following facts. On August 12, 1988, the defendant was arrested in New Jersey and eventually brought to the Middlesex county jail in Connecticut. He was transferred to the New Haven correctional center where he was

punched by some inmates during a fight. As a result, he was transferred to the Hartford correctional center where he was threatened by some inmates. He was then returned to New Haven on October 2, 1988, and there he was surrounded by several inmates and slashed on the arm and stomach. The defendant attributed these incidents to three brothers who were dealing drugs in front of his mother's house over his objections. The defendant asserted that these three brothers had threatened him.

The next day, the defendant was brought to the Waterbury courthouse lockup for pretrial proceedings involving a felony charge. While the defendant was in the lockup, several inmates overcame and subdued the deputy sheriffs, thereby escaping. The defendant was among the three inmates who escaped, but he denied having an active role in obtaining the lockup keys. The defendant fled, later testifying that "he hoped to get [the three brothers] before they got [him]." The defendant was arrested two days later when police found him hiding in an apartment closet.

The defendant first claims that the trial court should have charged the jury on the defense of necessity. The defendant objected and excepted to the trial court's decision not to instruct the jury on this defense and thus has preserved this claim for appeal. The common law defense of necessity, although not statutorily sanctioned, is available to Connecticut defendants in certain limited circumstances.[1] *State* v. *Messler*, 19 Conn. App. 432, 437, 562 A.2d 1138 (1989); *State* v. *Drummy*, 18 Conn. App. 303, 308, 557 A.2d 574 (1989). The defendant is required to make a preliminary showing

---

[1] The common law defense of necessity, preserved under a savings statute, General Statutes § 53a-4, is available to the same extent as the statutorily defined defenses of Chapter 951, particularly the affirmative defenses of justification in General Statutes §§ 53a-16a through 53a-23 and § 53a-48. *State* v. *Messler*, 19 Conn. App. 432, 439 n.5, 562 A.2d 1138 (1989).

through an offer of proof before the necessity defense may be submitted to the jury. *State* v. *Drummy,* supra, 309–10. Therefore, as a threshold question of law, the trial court must determine whether a necessity defense is warranted under the facts presented by the defendant. Id. If the court determines that there is sufficient evidence available to support the defense of necessity, then a defendant is entitled as a matter of law to a defense of necessity instruction. See *State* v. *Rosado,* 178 Conn. 704, 707, 425 A.2d 108 (1979).

Here, the trial court found that the defendant failed to present legally sufficient evidence to warrant a jury charge on the defense of necessity. The defendant challenges the legal standard used by the court when it decided this issue, namely, whether the court should have applied the factors utilized in *State* v. *Drummy,* supra, 309, rather than those it did apply, found in *People* v. *Lovercamp,* 43 Cal. App. 3d 823, 831–32, 118 Cal. Rptr. 110 (1975), and in *In re Juvenile Appeal,* 184 Conn. 157, 165 n.10, 439 A.2d 958 (1981). Thus, the dispositive issue in this claim is what legal standard should a trial court apply to judge the sufficiency of a defendant's offer of proof for the defense of necessity in a case of escape from custody.

In *State* v. *Drummy,* supra, the defendants were arrested during a protest demonstration and convicted of criminal trespass in the first degree. The defendants sought to introduce the necessity defense to justify their resorting to criminal trespass. The *Drummy* court held that the defense of necessity generally required a showing by the defendant (1) that there was no third and legal alternative available, (2) that the harm to be prevented was imminent, and (3) that a direct causal relationship may be reasonably anticipated to exist between the defendant's action and the avoidance of harm. Id. In the present case, the trial court chose not to apply the general *Drummy* factors but rather applied

the five specific factors from *Lovercamp,* a case dealing with an escape from custody, analogous to the case at bar.[2]

In *Lovercamp,* the California court held that, in the context of criminal escape, a limited defense of necessity is available if: "(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) there is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) there is no time or opportunity to resort to the courts; (4) there is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and (5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." *People* v. *Lovercamp,* supra. Thus, the *Lovercamp* test is more stringent than *Drummy.*

The *Lovercamp* test has been cited, with approval by the federal courts; *United States* v. *Bifield,* 702 F.2d 342, 346 (2d Cir.), cert. denied, 461 U.S. 931, 103 S. Ct. 2095, 77 L. Ed. 2d 304 (1983); *United States* v. *McCue,* 643 F.2d 394 (6th Cir.), cert. denied, 451 U.S. 992, 101 S. Ct. 2334, 68 L. Ed. 2d 853 (1981); *United States* v. *Boomer,* 571 F.2d 543, 545 (10th Cir.), cert. denied sub nom. *Heft* v. *United States,* 436 U.S. 911, 98 S. Ct. 2250, 56 L. Ed. 2d 411 (1978); and has been cited by the Connecticut Supreme Court. *In re Juvenile Appeal,* supra. The *Lovercamp* test has also been employed, either verbatim or with minor variations, by some states that have allowed the defense of necessity in escape cases. See *State* v. *Alcantaro,* 407 So. 2d 922, 925 (Fla. Dist. Ct. App. 1981); *State* v. *Horn,* 58 Haw.

---

[2] It should be noted that the same result would have been reached had the *Drummy* test been applied.

252, 566 P.2d 1378 (1977); *State* v. *Urquhart,* 105 Idaho 92, 96, 665 P.2d 1102 (1983); *State* v. *Stuit,* 176 Mont. 84, 88, 576 P.2d 264 (1978); *Jorgensen* v. *State,* 100 Nev. 541, 544, 688 P.2d 308 (1984); *Commonwealth* v. *Kaminski,* 349 Pa. Super. 78, 87, 502 A.2d 1281 (1985); *State* v. *Henderson,* 298 S.C. 331, 332–33, 380 S.E.2d 817 (1989); *State* v. *Miller,* 313 N.W.2d 460, 463 (S.D. 1981); see generally annot., 69 A.L.R.3d 678.

The rationale for applying more specific and stricter standards to the necessity defense in escape cases is to balance the public's interest in preventing escapes from legitimate detentions with the escaping prisoner's individual exigencies. "In a humane society some attention must be given to the individual dilemma. In doing so the court must use extreme caution lest the overriding interest of the public be overlooked. The question that must be resolved involves looking to all the choices available to the defendant and then determining whether the act of escape was the only viable and reasonable choice available. . . . However, before *Lovercamp* becomes a household word in prison circles and we are exposed to the spectacle of hordes of prisoners leaping over the walls screaming 'rape,' we hasten to add that the defense of necessity to an escape charge is extremely limited in its application. This is because of the requirement that upon attaining a position of safety from the immediate threat, the prisoner must promptly report to the proper authorities." *People* v. *Lovercamp,* supra, 827–31.

To maintain order in state correctional facilities and court lockups, and to avoid an invitation for facile excuses to attempt escapes from custody, the application of the necessity defense to criminal escapes must be strictly interpreted. Therefore, we hold that the

*Lovercamp* approach is the appropriate and proper test in cases of escape from custody when the defendant seeks to invoke the necessity defense.

In applying the *Lovercamp* factors to the defendant's case, the trial court correctly concluded that the defendant had failed to show sufficient evidence to meet the test of necessity. The defendant testified that he had no intention of turning himself over to authorities after he reached a position of safety from the alleged danger. On the contrary, the defendant stated his intent was "to get the [three brothers]," and the police found the defendant hiding when he was apprehended forty-eight hours after his escape. There was no credible evidence of an immediate threat to the defendant while the defendant was in the Waterbury lockup. Additionally, there was no evidence that the defendant's complaints were futile. In fact, the trial court found that the only complaint the defendant had made resulted in his transfer to another facility. The defendant had access to authorities that could have remedied any threat against him. Moreover, there was evidence that force or violence was employed in the escape. On the basis of these findings, the trial court correctly decided that the defendant had not made the preliminary showing sufficient for the defense of necessity to go before the jury.

The defendant next claims that the trial court failed to charge the jury on an essential element of escape from custody.[3] General Statutes § 53a-171 provides: "(a) A person is guilty of escape from custody if he escapes from custody. (b) If a person has been arrested for, charged with or convicted of a felony, escape from

---

[3] The trial court charged as follows: "Now, in the second count of the information the defendant is charged with the crime of escape from custody in violation of Connecticut General Statutes § 53a-171 which reads in pertinent part as follows: 'a person is guilty of escape from custody if he escaped from custody.' Custody means restraint by a public servant pur-

custody is a class C felony . . . ." The defendant asserts that the court did not properly instruct the jury on subsection (b) of the statute, and that the state must prove beyond a reasonable doubt that the defendant was being held on a felony charge at the time of his escape. Because the pendency of a felony charge is an essential element of the crime, the trial court was obligated to instruct the jury concerning it. *State* v. *Golding*, 213 Conn. 233, 238, 567 A.2d 823 (1989).

In its charge, the trial court pointed out that the assistant court clerk had testified that the defendant was being held on the day of his escape because of an arrest on a felony charge. The court also called the jury's attention to exhibit B, the bill of particulars that charged the defendant with escaping while charged with a felony. Although this instruction indicated the factual basis for the jury to conclude that the defendant was charged with a felony when he escaped, it did not instruct the jury that it must find beyond a reasonable doubt that the defendant was being held because of a felony arrest.

---

suant to an arrest or court order. The word 'escape,' you should apply its natural and ordinary meaning. The concept of escape is one of voluntarily leaving or departing from the place where the defendant was being held in custody.

"Now, it's my recollection that Mrs. Capuano testified that she was the assistant clerk of this court, that her records reflected that on October 3, 1988, the defendant was being held in lieu of bond because of his arrest on a felony charge. It's my recollection also that she testified that Exhibit B was the court order under which the defendant was being held in custody.

"If you find beyond a reasonable doubt that the defendant was in custody, as I have defined that term to you, and he escaped from that custody, then the state would have satisfied its burden of proof with respect to the charge of escape from custody and you may then find the defendant guilty of that offense. If, on the other hand, you do not find that the state has proven that the defendant was in custody as I have defined that term to you or if you find that the state has not proven that the defendant escaped from custody, then you must find the defendant not guilty of that offense as charged."

To begin our analysis, it should be noted that the defendant failed to submit a requested written instruction or except to this portion of the instruction and requests review under the *Evans-Golding* criteria. See *State* v. *Golding,* supra, 239–40. The trial court's omission of an instruction on an essential element of a crime charged raises a claim of a constitutional violation and warrants review. *State* v. *Golding,* supra, 238.

In the absence of a request or an exception, reversal is warranted only if the charge failed to provide the jury with the essential elements of the offense on which the conviction rests or the case must invoke plain error requiring such result in the interests of justice. *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). An error in the charge requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict. *State* v. *Anderson,* 212 Conn. 31, 38, 561 A.2d 897 (1989). An erroneous instruction on an element of the offense can be harmless beyond a reasonable doubt, if, given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element. *United States* v. *Doherty,* 867 F.2d 47, 58 (1st Cir.), cert. denied, 492 U.S. 918, 109 S. Ct. 3243, 106 L. Ed. 2d 590 (1989).

Our review of the charge as a whole leads us to conclude that the jury was not misled. The state offered clear evidence that the defendant was being held on a felony charge and the trial court so indicated to the jury. The defendant never disputed that he was being held on a felony charge. On the basis of this unequivocal evidence, the jury correctly found the defendant guilty of escape from custody while charged with a felony. Thus, the trial court's omission of instruction

on this element was harmless beyond a reasonable doubt and did not contribute to the jury's verdict.

The judgment is affirmed.

In this opinion the other judges concurred.