STATE OF CONNECTICUT *v.* RUSSELL BRELSFORD
(7810)

DUPONT, C. J., DALY and FOTI, Js.

Argued November 8, 1990—decision released March 19, 1991

*William R. Schipul,* assistant public defender, with whom, on the brief, was *William Holden,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Smriga,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of escape from custody in violation of General Statutes § 53a-171.[1] The defendant claims that the trial court improperly allowed a treating psychiatrist from the Bridgeport correctional center to testify as a state's witness concerning matters that were protected by the psychiatrist-patient privilege. We affirm the judgment of the trial court.

The defendant did not contest the state's allegation that he left custody, but, rather, elected to raise two affirmative defenses both of which arose from his need for Elavil, an antidepressant medication. The defendant asserted (1) duress, alleging that police officers in the lock up area threatened him physically when he asked for Elavil, and (2) necessity, alleging that part of his reason for leaving custody was to obtain this medication.[2]

---

[1] The information charged that the defendant escaped from custody while in the booking area of the Bridgeport police department where he was being charged with the crime of sexual assault in the first degree, a felony.

[2] We note that this court has held, subsequent to the judgment rendered in this case, that to succeed in establishing a defense of necessity to the crime of escape from custody, a defendant must meet five requirements. In *State* v. *Woods,* 23 Conn. App. 615, 583 A.2d 639 (1990), we adopted the holding of *People* v. *Lovercamp,* 43 Cal. App. 3d 823, 831–32, 118 Cal.

The defendant offered the testimony of Roseanne Wenz, a nurse and supervisor of the medical department at the Bridgeport correctional center, who maintained the records of the medications that physicians order for the inmates. Wenz testified that from September 2 to November 2, 1986, the defendant had been prescribed 100 milligrams of Elavil at bedtime. She classified this medication as an antidepressant, and characterized it as a mood elevator rather than as a tranquilizer. It was administered orally in pill form. The defendant also called Mary Lou McDougall, a clerk at the institution, who produced the defendant's mittimus which indicated that he needed medication and that a suicide watch was placed on him.

The defendant testified that the police had refused to give him Elavil when he asked for it and told him to be quiet or they would hurt him. He further testified that he was afraid to go without Elavil because he had taken it for a long time, and that, although he thought the police would kill him if he continued to ask for the medication, he felt he could not function without it. On cross-examination, he stated that he took Elavil because the doctor told him to and that every time he is in jail he receives the medication if he sees the doctor.

Rptr. 110 (1975). "In *Lovercamp,* the California court held that, in the context of criminal escape, a limited defense of necessity is available if: '(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) there is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) there is no time or opportunity to resort to the courts; (4) there is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and (5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.' " *State* v. *Woods,* supra, 619.

The record contains no evidence that the defendant complied with the fifth requirement of this defense and, therefore, he would not have had a valid defense of necessity had his trial taken place after *State* v. *Woods,* supra.

After the defendant's case-in-chief, the state presented James Alexander, the psychiatrist at the Bridgeport facility. He testified, over the defendant's objection,[3] as to years of treatment, the defendant's problems with depression, his therapy with the medication Elavil, his adjustment to incarceration and whether he was intimidated. Specifically, he testified that he had treated the defendant for years and that he currently prescribed Elavil for the defendant, which is an antidepressant drug possessing moderate sedating qualities. The withholding of one dose of Elavil would result in a slight decrease in the medication level in the blood, not sufficient to cause any significant agitation or any type of withdrawal symptom. The withholding of more than one dose, Alexander testified, would not cause any substantial change in behavior. There are no withdrawal symptoms from the cessation of Elavil.

In the defendant's case, this regimen served primarily as a chemical restraint to help control some of the defendant's aggressive and obstreperous behavior. The defendant had also shown some symptoms of mild depression and this would be the treatment for depression. Alexander also testified that, even if the defendant were not in the correctional facility, some form of sedation or chemical restraint would be necessary. He further testified that the defendant had made a rea-

---

[3] The defendant objected to the testimony on the basis of the psychiatrist-patient privilege set out in General Statutes §§ 52-146c to 52-146i. General Statutes § 52-146e provides in part: "(a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative."

sonable adjustment to incarceration, and that his behavior had not been altered in any way since the development of a psychotic state.

There is no dispute that Alexander is a psychiatrist and is acting as such at the Bridgeport facility and that the defendant is his patient. The state argues that the defense has failed to establish the existence of a patient-psychiatrist relationship. The record, however, clearly shows otherwise.[4]

The state also argues that although General Statutes § 52-14e (a) generally prohibits[5] any person from disclosing or transmitting "any communications and rec-

---

[4] The record reveals the following testimony by James Alexander:

"Q. And as a psychiatrist at the North Avenue Correctional Center have you had occasion to treat Mr. Russell Brelsford?

"A. Yes I have.

"Q. Now—and that occurred where?

"A. That occurred at the Bridgeport Correctional Center in the course of my routine responsibility as a state psychiatrist assigned to the correctional center.

"Q. How long have you had occasion to treat Mr. Brelsford?

"A. Several years.

"Q. And do you know whether or not he is prescribed any medication?

"A. Yes, he is.

"Q. And what medication is he currently prescribed?

"A. He's presently taking Elavil which is an antidepressant medication.

"Q. Okay. And could you explain why you prescribed Elavil for Mr. Brelsford?

"A. Yes. In Mr. Brelsford's case—first I must explain about Elavil. Elavil also has a moderate sedating quality. In Mr. Brelsford's case his primary reason for being on Elavil is a form of chemical restraint to help control some of his aggressive and obstreperous behavior. Also, he has from time to time manifested some symptoms of mild depression and, of course, this would be the treatment of choice for depression also.

"Q. If you were treating Mr. Brelsford outside of a prison situation would you use the same course of drug therapy?

"A. That would depend on the circumstances and certainly on his behavior. I would either use that or use some other form of sedation or chemical restraint."

[5] The statute contains several exceptions that are not relevant in this case, and permits the patient or his authorized representative to waive the privilege.

ords or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency," it does not apply in this case because the testimony contained no direct reference to any communication or record. This argument is also without merit. General Statutes § 52-146d (2) defines communication and records to mean "all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist . . . including communications and records which occur in or are prepared at a mental health facility . . . ." General Statutes § 52-146d (5) defines a mental health facility to include "any hospital, clinic, ward, psychiatrist's office or other facility, public or private, which provides inpatient or outpatient service, in whole or in part, relating to the diagnosis or treatment of a patient's mental condition . . . ." The hospital clinic section at the Bridgeport facility is clearly a mental health facility pursuant to the statute. General Statutes § 52-146d (6) defines patient as a "person who communicates with or is treated by a psychiatrist in diagnosis or treatment . . . ." In summation, Alexander's testimony described the treatment of a patient at a mental health facility and was, therefore, within the scope of the statute.

The state further argues that Alexander's diagnosis of the defendant may have been based on observations rather than communications or records and that the record is insufficient to show otherwise. Again, we do not agree. The record is clear that Alexander treated the defendant for years, had his records before him and diagnosed and treated the defendant in a psychiatrist-patient relationship. It is obvious that the relationship is based not only on observations, but also on communications and records.

The state's final argument is that, although there is no express waiver, the defendant waived the privilege by his conduct. The state argues that the defendant cannot assert the privilege because he put his need for Elavil into issue by raising the affirmative defense of necessity.[6] We agree.

"[A] waiver must be the intelligent relinquishment of a known right. A necessary element to waiver is the requisite knowledge of the right and a waiver presupposes a full knowledge of an existing right or privilege and something done designedly or knowingly to relinquish it." *State* v. *Toste,* 178 Conn. 626, 629–30, 424 A.2d 293 (1979). The standard for finding such a waiver " 'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.' " *State* v. *Acquin,* 187 Conn. 647, 666, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983), quoting *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). It may be shown that a party may intentionally relinquish a known right, by his conduct, if that conduct is not equivocal or of doubtful import. *O'Keefe* v. *St. Francis Church,* 59 Conn. 551, 561 (1890); see also *In re Manuel R.,* 207 Conn. 725, 736 n.7, 543 A.2d 719 (1988).

The conduct herein, that of exercising a defense of necessity by the defendant's testimony that he believed himself dependent on a drug, indicates a plain intention to abandon the privilege, and such conduct places the state in such a position, with reference to the evidence, as to have us conclude that it would be unfair and inconsistent to permit the retention of the privi-

[6] The state argues that the defendant should not be permitted to prevail by using the psychiatrist-patient privilege as a "sword" to exaggerate his dependency and also as a "shield" to prevent the truth from being known.

lege. The defendant's entire defense is based on his claimed need for Elavil. The issue raised in defense is not whether the defendant was truly dependent on Elavil, but rather whether he believed he was in need of that drug. The state could rebut an objective test of drug dependency by any competent evidence showing that Elavil is not a drug that causes addiction or dependency; however, to rebut the subjective belief issue raised by the defendant required getting into his mind, and that rebuttal could only be accomplished through the testimony of Alexander. The state presented Alexander's testimony not only to show the purpose and effects of the drug Elavil, but also to explain how the defendant thought that drug affected him. The state was placed in an untenable position by the defendant's assertion of the defense and did not have an alternative to counter the defendant's position without resorting to the privileged testimony of Alexander.

We recognize that, while the defendant has both the constitutional right to assert a defense and the statutory right to claim a privilege, under certain circumstances the assertion of both might collide, causing the privilege to be relinquished. In this case, the defendant's testimony about his subjective belief of his need for Elavil did exactly that. The exercise of the right to a defense of necessity did not cause a waiver of the privilege, but, rather, the defendant's testimony that he believed himself dependent on Elavil, a nonaddictive drug, resulted in that waiver. Compare *State* v. *Toste,* supra.

It was the defendant's voluntary testimony that without the medication he could not function and that he escaped to get the Elavil. He put in issue his reasons for the escape and that testimony constitutes a waiver of the privilege. It would not serve the ends of justice to allow the defendant to describe at length to the jury his supposed great need, both mentally and physically,

for a nonaddictive drug, and then to allow him to claim a privilege in order to suppress the available proof of his false statements.

While we perceive that the admission of Alexander's testimony may have been harmful to the defendant, we must conclude that in order to mount his particular defense through his subjective beliefs, the defendant, by that very act, waived the privilege.

The judgment is affirmed.

In this opinion the other judges concurred.