STATE OF CONNECTICUT *v.* RICHARD McCLENDON
(12233)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued October 10, 1985—decision released March 4, 1986

*James E. Swaine,* for the appellant (defendant).

*Robert J. O'Brien,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* and *Roland D. Fasano,* assistant state's attorney, for the appellee (state).

SANTANIELLO, J. On February 1, 1982, the defendant was convicted of four counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1]

---

[1] General Statutes § 53a-134 provides: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens

He subsequently was sentenced to an effective prison term of not less than ten nor more than twenty years, execution suspended after ten years and five years probation. He now appeals[2] claiming that the trial court erred (1) in denying his pretrial motion in limine and in admitting into evidence testimony of out-of-court identifications of the defendant's accomplices, and (2) in admitting evidence of a prior crime allegedly committed by the defendant. We find no error.

The jury could reasonably have found the following facts. On the night of January 16, 1981, a dice game took place at 448 Legion Avenue in New Haven involving between seven and twelve participants. At one point during the evening, the defendant and three other men entered the room and announced a "stick-up." All four intruders were unmasked and armed with pistols or other handguns. The victims were ordered to take off their clothes and to surrender all their money and valuables to the robbers. The entire robbery lasted fifteen to twenty minutes.

## I

The defendant claims that the court erred in denying his pretrial motion to bar the introduction of evi-

---

the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[2] The defendant's appeal from his conviction comes to us by way of habeas corpus proceedings. The defendant originally failed to file his appeal within the time required by our rules. He petitioned for, and was granted, a writ of habeas corpus, and was allowed permission to file this appeal.

dence concerning out-of-court identifications of the defendant's three accomplices in the robbery. He claims that the evidence offered was irrelevant, and also should have been excluded as hearsay.[3] The robbery at the dice game was committed by four armed men, one of whom was alleged to have been the defendant. The state presented four victims as witnesses. All four victims made in-court identifications of the defendant, and three of them had made out-of-court identifications of the defendant. They also testified that they had made out-of-court photographic identifications of the three accomplices within several days of the robbery.

The defendant claims that the evidence of photographic identifications of other participants in the crime was irrelevant and, as such, was inadmissible. He claims that since the co-perpetrators were not defendants in this trial, evidence of their identification should not have been allowed. The state contends that evidence concerning the identity of the other robbers was relevant to whether the defendant was a participant in the crime and was corroborative of other evidence presented on behalf of the state.

In addressing the defendant's claim, we note at the outset that the trial court possesses broad discretion to resolve questions of relevancy. *State* v. *DeForge,* 194 Conn. 392, 396, 480 A.2d 547 (1984). " ' "Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the

---

[3] The defendant also claims that the state's introduction of the identification evidence in its case-in-chief was an attempt to accredit its witnesses prior to impeachment. See *State* v. *McCarthy,* 179 Conn. 1, 18, 425 A.2d 924 (1979). Because we hold that the identifications were relevant to the issue of identity and were admissible independent of impeachment, the defendant's argument is unavailing.

one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. . . ." ' " *State* v. *Gold,* 180 Conn. 619, 645–46, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). Here, the testimony of the four victims as to their out-of-court identification of the co-perpetrators was corroborative of their ability to identify the defendant and, as such, was admissible. Corroborating evidence is "[e]vidence supplementary to that already given and tending to strengthen or confirm it." Black's Law Dictionary (5th Ed. 1979); see *State* v. *Pierce,* 107 Idaho 96, 100, 685 P.2d 837 (1984); *Edwards* v. *Edwards,* 501 S.W.2d 283, 289 (Tenn. App. 1973). Evidence of this nature aided the trier in determining whether the defendant participated in the robbery. Thus, the testimony of these witnesses was relevant and the trial court did not err in so concluding.[4]

The defendant also claims that the witnesses' testimony about their prior identifications should have been excluded as hearsay. The out-of-court identifications were made within several days of the robbery and were trustworthy. The defendant makes no claim that these identifications were either unreliable or the product of an unnecessarily suggestive procedure. The witnesses testified to the facts and circumstances surrounding the out-of-court identifications and the officer who administered the photographic lineups testified as to the procedures employed. These witnesses were available to the defendant for cross-examination.

Although we have never addressed the specific claim in the context raised by the defendant, we have indi-

---

[4] We find it interesting to note that, at oral argument, defense counsel conceded that the identification would have been relevant if the witnesses had failed to identify the accomplices.

cated that an exception to the hearsay rule exists " 'where the statements are made under conditions deemed to render them equal in reliability and trustworthiness' to those made under 'the sanction of an oath and the test of cross-examination.' " *Cherniske* v. *Jajer,* 171 Conn. 372, 376–77, 370 A.2d 981 (1976); *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* 154 Conn. 593, 597, 227 A.2d 548 (1967); see also *State* v. *Packard,* 184 Conn. 258, 283–85, 439 A.2d 983 (1981) (*Bogdanski, J.,* concurring). And, in *State* v. *Frost,* 105 Conn. 326, 341–42, 135 A. 446 (1926), this court allowed the use of out-of-court identifications to support an in-court identification of a defendant based on the argument that even though the evidence itself may be hearsay, the out-of-court identification is nonetheless more reliable because it is made in closer proximity to the actual perception and is usually more trustworthy than the in-court identification.

Other jurisdictions have adopted a similar approach. For instance, the California Supreme Court has stated that: "[u]nlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached . . . evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind." *People* v. *Gould,* 54 Cal. 2d 621, 626, 354 P.2d 865, 7 Cal. Rptr. 273 (1960). Under the federal rules of evidence such statements are excluded from the definition of hearsay.[5] Fed. R. Evid., rule

---

[5] Federal Rule of Evidence 801 (d) (1) (C) provides: "A statement is not hearsay . . . (C) if one of identification of a person made after perceiving him."

801 (d) (1) (C); see *United States* v. *Lewis,* 565 F.2d 1248, 1250–52 (2d Cir. 1977), cert. denied, 435 U.S. 973, 98 S. Ct. 1618, 56 L. Ed. 2d 66 (1978).

Reviewing the testimony of the witnesses concerning the out-of-court identifications in light of the above principles, we conclude that the statements were admissible. We hereby hold that in situations such as this where the identifications were reliable and the witnesses were available for cross-examination an exception to the hearsay rule is warranted. As a result, we find that the trial court did not abuse its discretion in admitting the testimony in question.

## II

The defendant next claims that the court erred in denying his motion for mistrial and in admitting evidence of a prior crime allegedly committed by the defendant.

In presenting his alibi defense, the defendant on direct examination testified concerning his relationship with two of his alleged accomplices, Sherman Miles and Julius McFadden. As to Miles, he testified that they had "had a fight" and did not see each other from December, 1980, until after his arrest for the "dice game" robbery. He further testified that he had seen McFadden only once at his home during the same time span and that he did not consider him a friend. In addition, the defendant stated that he had never done anything with Miles and McFadden. On cross-examination, the defendant was asked whether he had given a statement to a police officer indicating that he had been with Miles and McFadden on January 7, 1981, and had participated with them in a robbery of a package store. The question was offered to show that the defendant had made a prior inconsistent statement. The defendant objected to the question and moved for a mistrial. The trial court, however, admitted the statement

and denied his motion. Immediately afterwards the court instructed the jury that the evidence "was admitted solely on the question of the credibility of the defendant when he testified and testified generally about his relationship with Sherman Miles and Julius McFadden . . . . The fact that it brought out his alleged involvement in another crime activity, that is not to be considered by you in deciding whether or not he is guilty of the crime or crimes that he is here charged with."

It is well established that once an accused takes the stand and testifies his credibility is subject to scrutiny and close examination. *State* v. *Carter,* 189 Conn. 631, 640, 458 A.2d 379 (1983). A defendant cannot both take the stand and be immune from impeachment. The state is entitled to cross-examine a defendant and attack his credibility by use of prior inconsistent statements. An accused who testifies subjects himself to the same rules and tests which could by law be applied to other witnesses. *State* v. *Palozie,* 165 Conn. 288, 298, 334 A.2d 468 (1973).

The defendant's credibility was a highly important issue at trial. The defendant in taking the stand opened the door to impeachment and subjected himself to the rigors of thorough cross-examination. It would not be fair to the state if he were allowed to take the stand, misstate the facts and be immune from attack. As Justice Cardozo has written: "justice, though due to the accused, is due to the accuser also." *Snyder* v. *Massachusetts,* 291 U.S. 97, 122, 54 S. Ct. 330, 78 L. Ed. 674 (1934). Fairness is a double-edged sword and both sides are entitled to its benefits throughout the trial.

When the court ruled that the disputed question was proper, the defendant denied having made the inconsistent statement. As a result of this course of events, the state introduced evidence in rebuttal that a police

officer was told by the defendant that he had been in the company of both Miles and McFadden on January 7, 1981, and that they had, in concert, committed a robbery of a package store in New Haven. This testimony was offered as a prior inconsistent statement going to the issue of credibility.

As a general rule, evidence of other crimes is not admissible to prove the bad character or criminal tendencies of the defendant. *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). Such evidence, however, may be admissible when a defendant testifies and his credibility is in issue. *State* v. *Brown,* 169 Conn. 692, 700–701, 364 A.2d 186 (1975). Even though the evidence may be relevant and material to the issue of the defendant's credibility, the court is still required to conduct a balancing test to determine whether the probative value of the evidence outweighed its prejudicial tendency. *State* v. *Braman,* 191 Conn. 670, 681, 469 A.2d 760 (1983). Ordinarily, "prejudicial material, such as unrelated misconduct of an accused, not having substantial probative value upon some issue in the case should be excluded." *State* v. *Anonymous (83–FG),* 190 Conn. 715, 730, 463 A.2d 533 (1983). A mistrial would be warranted if the introduction of the other crimes evidence denied the defendant an opportunity for a fair trial. *State* v. *Dolphin,* 195 Conn. 444, 453, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985).

Here, the defendant testified inconsistently. It is clear from the record that he had confessed to committing an unrelated robbery with Miles and McFadden on January 7, 1981. Yet, he denied seeing Miles from December, 1980, until after his arrest for the "dice game" robbery. He also claimed he had only seen McFadden once at his home during the same time span. On cross-examination, he denied outright making the statement regarding the January 7, 1981 incident. As

a result of his testimony, the state was justified in bringing to light his prior inconsistent statement in order to impeach his credibility. The court minimized the effect of the other crimes evidence by its cautionary instruction to the jury. In the court's considered opinion, the evidence offered as to credibility was more probative than prejudicial. The court, in its discretion, ruled the evidence admissible but limited its admissibility to the defendant's credibility. " 'Because of the difficulties in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . .' " *State* v. *Braman,* supra, 676. When a trial court's decision on an issue of this type is subjected to appellate review, " ' "[e]very reasonable presumption should be given in favor of the trial court's ruling." . . .' " Id., 677. Under the circumstances of this case, we cannot say that the court abused its discretion.

There is no error.

In this opinion the other judges concurred.