[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION FOR ACQUITTAL: MOTION FOR NEW TRIAL
The defendant Martyn Bruno was arrested on August 10, 1991 and charged with the crime of murder in violation of General Statute Sec.53a-54a. Following a plea of not guilty the defendant waived his right to a jury trial and elected to be tried by a three judge panel. Conn. Gen. Stat. Sec. 54-82; Sec. 54-82b.
The defendant was presented for trial on a five count information charging him with the murder of David Rusinko on or about July 17, 1991 in violation of Gen. Stat. Sec. 53a-54a, Sec. 53a-8; conspiracy to commit murder with Brian Bingham, Gen. Stat. Sec. 53a-48, 53-54a; and three counts of tampering with physical evidence in violation of Gen. Stat. Sec. 53a-155(a)(1), Sec. 53a-8. (See Appendix) The three judge court found the defendant not guilty of conspiracy but guilty beyond a reasonable doubt of the other four counts. There are now pending a motion for acquittal and a motion for a new trial.
The evidence presented by the State established that on July 17, 1991 the defendant, David Rusinko, Brian Bingham and Cara Lee Ignacak were at a campsite located in the woods off of the Farmington River Turnpike in New Hartford. At the lower campsite the defendant told CT Page 6758 Bingham regarding the victim that "he wanted to fuck him up". Mr. Bruno was upset with Mr. Rusinko because of a driving under the influence charge of which Bruno had been convicted as well as drug involvement, and in addition he stated that "I want to beat David Rusinko to death".
At the upper campsite an argument ensued between the defendant and the victim culminating in a vicious assault during which Mr. Rusinko was repeatedly kicked, struck and beaten with metal pipes. Both Mr. Bruno and Mr. Bingham participated in the beating which resulted in the death of Mr. Rusinko.[1] Mr. Bingham testified that during the assault, he and Mr. Bruno spoke as follows:
"Q. What happens next?
"A. At one point, I said "Isn't that enough?" And Marty goes, `No, that is not enough. I am going to fuckin' kill him.'
"Q. What did he say sir?
"A. He said, `No, that is not enough. I am going to fuckin' kill him.'
"Q. What happens next?
"A. He proceeded to beat Dave repeatedly.
"Q. Did he say anything else?
"A. He said if he was to stop now, David would go to the cops.
"Q. What happens next?
"A. After a few minutes of David getting beat, he stopped. He told me to go over and snap David's neck. I went over to where David was lying, put my back to Marty, and I made the gesture that I was doing. He came over and he said, `No, that is not how you do it.' He said, `This is how you do it.' Then he proceeded to snap David's neck." Tr. April 14, 1993, p. 32.
After it appeared that Mr. Rusinko was dead, Mr. Bruno and Mr. Bingham placed the victim's body in the fireplace where it was consumed by fire. A day or two later the defendant and Mr. Bingham returned to the cabin, poured paint on the floor to cover up blood, disposed of the victim's ashes in an outhouse and buried the victim's bicycle.
I CT Page 6759
Motion For Acquittal
In his motion for acquittal, the defendant claims that the evidence is insufficient to permit an inference and finding of specific intent. He bases this claim on the grounds, that having found him not guilty of conspiracy, the court by implication found against the State on the question of premeditation, and further that the purported acts of the defendant were performed in the course of a heated argument after he had consumed a quantity of alcohol and drugs.
 A
The first prong of the defendant's argument overlooks the very nature of conspiracy. To be guilty a person must agree "with one or more persons to engage in or cause the performance of such conduct" that would constitute a crime and any one of them commits an overt act in pursuance of such conspiracy. State v. Marra, 174 Conn. 338, 344 (1978). The most that can be said of Mr. Brian Bingham's involvement was that he agreed to help Mr. Bruno if during a fight Mr. Rusinko started to get the best of him.[2] This agreement to assist in a fight is a far cry from an agreement to commit murder. At most, it could be construed as an agreement to commit an assault.
Intent to cause death is an essential element of intentional murder. State v. Crafts, 226 Conn. 237, 248 (1993); State v. Avcollie,178 Conn. 450 (1979); State v. Moye, 177 Conn. 487 (1979). In this case, we have evidence not only of the vicious nature of the crime, but the specific words of the defendant. See State v. Miller, 154 Conn. 622
(1967). Likewise the evidence of the extreme lengths to which defendant went to coverup the crime demonstrates a guilty mind. State v. Smith, 138 Conn. 196, 201 (1951); State v. Miller, supra, 628.
 B
The second claim of the defendant concerns his use of alcohol and drugs. Initially, this ground for the motion must rest on the defendant's credibility which the court finds deficient. The credibility of witnesses is in the sole determination of the trier of fact. State v. Farrah,161 Conn. 43, 49 (1971); State v. Mitchell, 169 Conn. 161, 170 (1975). There was considerable evidence from the defendant of his physical activities on July 17, 1991, including mowing lawns, working on a small carburator [carburetor] riding a motorcycle as well as his detailed claims of alcohol consumption. In all other areas his recollection appeared intentionally vague or non-existent. CT Page 6760
In addition to the defendant's testimony, the court had the testimony of both Mr. Bingham and Ms. Ignacak. They both recited in detail the activities of Mr. Bruno, his participation in the fatal assault and his involvement in depositing the victim's body in the fireplace. The court finds these witnesses to be credible, both of whom testified to evidence against their penal interest. Cf. State v. Bryant, 202 Conn. 676, 692
(1987). This evidence, together with that of the defendant, leads to a finding that Mr. Bruno was not so intoxicated by alcohol and/or drugs at the time of the murder that he was incapable of forming a rational intent or of controlling his will. State v. Utz, 201 Conn. 190, 209
(1986).
For the reasons stated, the motion for acquittal is denied.
 II
Motion for New Trial.
In his motion for a new trial, the defendant claims that there was no physical evidence linking him to the alleged murder except the testimony of Mr. Bingham and Ms. Ignacak who had prior psychiatric records which were not made available, and that six metal pipes were introduced into evidence without a proper foundation.
 A
The defendant asserts that the Court improperly denied him access for purposes of cross examination to the available psychiatric records of Mr. Bingham and Ms. Ignacak which he had subpoenaed. Disclosure of such records is limited by Gen. Stats. Sec. 52-146e, which provides in relevant part as follows:
 Sec. 52-146e. Disclosure of communications. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.
The defendant has the burden of showing that the "privileged records would disclose information especially probative of a witness' ability to CT Page 6761 comprehend, know or correctly relate the truth. . .". State v. Pierson,201 Conn. 211, 225 (1986). Before the Court inspects the records in camera, the defendant must make a threshold showing that there is a reasonable probability that the records would reveal information especially probative of a witness' ability to comprehend, know or correctly relate the truth. State v. D'Ambrosio, 212 Conn. 50, 58-59 (1989).
The evidence offered in regard to Mr. Bingham indicated that at one time he abused drugs, had difficulty in school, and resented authority figures. "A history of alcohol or drug treatment does not automatically make a witness fair game for disclosure of psychiatric records to a criminal defendant." State v. D'Ambrosio, supra, 60; State v. Burak,201 Conn. 517, 524 (1986).
The evidence presented regarding Ms. Ignacak disclosed a learning disability, psychiatric counselling for mild depression and difficulty in personal relationships. The witness graduated from high school and at the time of trial was not under the care of any psychiatrist. Her psychiatric treatment was directed to learning difficulties and behavioral problems. As with Mr. Bingham, the defendant's offer of proof fails to reach the standard required for an in camera examination of psychiatric records. State v. D'Ambrosio, supra, 59.
 B
The final claim of the defendant is that the court erred in admitting into evidence six metal pipes due to a lack of a proper foundation.
As stated in State v. Gold, 180 Conn. 619, at 645 (1980):
 No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. Eason v. Williams, 169 Conn. 589, 591, 363 A.2d 1090 [1975]; State v. Towles, 155 Conn. 516, 523, 235 A.2d 639 [1967]." State v. Runkles, 174 Conn. 405, 413, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 168 (1978). We have noted that "`Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier CT Page 6762 in the determination of the issue. . . . State v. Towles, 155 Conn. 516, 523, 235 A.2d 639 [1967]; Pope Foundation, Inc. v. New York, N. H. H.R. Co., 106 Conn. 423, 435, 138 A. 444 [1927].'" State v. Villafane, 171 Conn. 644, 674-75, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S.Ct. 1137, 51 L.Ed.2d 558 (1977).
Likewise in State v. Greene, 209 Conn. 458, at 477 (1988), the Supreme Court summarized the rule regarding relevancy as follows:
 The defendants' brief sets out the following test for relevancy, both elements of which he maintains must be met: (1) "The terms [had to have been] used in the crime and (2) the items [had to be] in some manner linked to the Defendant." While this projection of the relevancy test may, in part, be true, it is not the well settled relevancy test that we often have cited, and we see no reason to depart from our precedent in this case. The accepted relevancy test is that "`"`[e]vidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. . . .'"'" State v. McClendon, 199 Conn. 8-9, 505 A.2d 685 (1986); State v. Gold, 180 Conn. 619, 645-46, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S.Ct. 320, 66 L.Ed.2d 148 (1980). The trial court "possesses broad discretion to resolve questions of relevancy." State v. McClendon, supra, 8; see State v. Pollitt, 205 Conn. 61, 92, 530 A.2d 155 (1987).
The six pipes admitted into evidence, satisfy the Greene test. There was evidence by both Mr. Bingham and Ms. Ignacak that metal pipes were used in the beating, they were found near the murder scene and there was evidence of blood spatter which reasonably could have been deposited by a striking motion. The court finds that this physical evidence was relevant and properly admitted. State v. Esposito, 223 Conn. 299, 316
(1992).
For the reasons stated, the motion for a new trial is also denied.
PICKETT, J. CT Page 6763
SUSCO, J.
FINEBERG, J.
APPENDIX
Sec. 53a-54a. Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.
Sec. 53a-8. Criminal liability for acts of another. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.
Sec. 53a-48. Conspiracy. Renunciation. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. CT Page 6764
Sec. 53a-155(a)(1). Tampering with or fabricating physical evidence: Class D. felony. (a) A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding; or (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such official proceeding.