STATE OF CONNECTICUT *v.* PAUL VARSZEGI
(12599)

O'CONNELL, FOTI and SCHALLER, Js.

Argued November 1, 1994—decision released January 31, 1995

*James J. Ruane,* special public defender, with whom, on the brief, was *James O. Gaston,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard L. Palombo, Jr.,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempted escape in the first degree in violation of General Statutes §§ 53a-49 and 53a-169 (a) (1),[1] and criminal mischief in the second degree in violation of General Statutes § 53a-116 (a) (1).[2]

---

[1] General Statutes § 53a-49 (a) provides: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-169 (a) provides in relevant part: "A person is guilty of escape in the first degree (1) if he escapes from a correctional institution . . . ."

[2] General Statutes § 53a-116 provides in relevant part: "(a) A person is guilty of criminal mischief in the second degree when: (1) With intent to

The defendant claims that (1) he did not knowingly and intelligently waive his right to counsel, (2) the impeachment of his credibility by a conviction which was later vacated on appeal violated his constitutional rights, (3) the trial court improperly rejected his defense of necessity, and (4) the trial court improperly admitted into evidence two prior failure to appear convictions. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant was a sentenced prisoner at the community correctional center at Bridgeport on March 1, 1992, when a correction officer discovered a hacksaw blade hidden in his cell. On further inspection, the officer discovered that the window in the cell had been cut. The defendant admitted that he had cut the bars on the window.

The defendant testified and introduced evidence claiming to show that he was motivated to escape because (1) he was fearful of assault by other inmates, (2) he was not receiving proper medical care, and (3) he was in danger of contracting tuberculosis. He argues that this scenario supports the common law defense of necessity.

I

The defendant, who is represented by counsel on appeal, claims that the trial court improperly permitted him to represent himself throughout his trial. At his initial appearance in the Superior Court, the defendant advised the court that he wanted to appear pro se. The trial court canvassed the defendant in accordance with Practice Book § 961[3] and found that he had knowingly and intelligently waived his right to counsel.

cause damage to tangible property of another and having no reasonable ground to believe that he has a right to do so, he damages tangible property of another in an amount exceeding two hundred fifty dollars . . . ."

[3] Practice Book § 961 provides: "A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage

The defendant concedes that the canvass and waiver of counsel were proper, with the exception that he was not adequately advised of the nature of the charges or the dangers of self-representation. The record discloses that the defendant was a "few credits shy" of a college degree, was a landlord with more than 500 tenants and did business in insurance and real estate development. The court also found that he had represented himself at a sentencing hearing in the federal court[4] before appearing in court in the present case.

Although the court advised him that a public defender would be appointed for him if he qualified, he declined because he felt that because public defenders and prosecutors were both employees of the state, there might be a conflict of interest. He also expressed dissatisfaction with attorneys who had represented him in prior cases. Notwithstanding the defendant's adamant insistence on self-representation, the trial court appointed a public defender to act as standby counsel.

Despite the defendant's claim to the contrary, the record discloses that the trial court advised the defendant of the charges and of the range of penalties that could be imposed for each crime. We do not agree with the defendant that the trial court had a duty to advise him in such depth as to include, inter alia, (1) concep-

of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[4] In the federal case, the defendant had been represented by counsel at trial but appeared pro se at sentencing.

tual distinctions between a completed crime and the inchoate crime of attempt, (2) the possible defense of abandonment, (3) his right to assert inconsistent defenses, and (4) the rule of evidence that allows a defendant to explain to the jury that a prior conviction used to impeach him is on appeal.

On appeal, the defendant, now represented by experienced counsel, looks back over the record and points to his mistakes, which would not have been made by an experienced trial attorney. He claims that it was the trial court's duty to foresee generic problems that might have arisen and to have warned him of them. We do not find such an extensive duty in Practice Book § 961, nor will we impose the impossible mantle of clairvoyance on our trial judges. We cannot require that they predict the problems that may occur due to the vicissitudes of a trial. Furthermore, we decline to lay down a rule that would make the trial court counsel for the defendant.

"[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . . [H]is technical legal knowledge as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself. . . . [T]o also require a lawyer's expertise as a prerequisite to asserting the right would deny it to all but a small portion of society." (Citation omitted; internal quotation marks omitted.) *State* v. *Gethers*, 193 Conn. 526, 533, 480 A.2d 435 (1984).

There can be no dispute that a defendant has a right under our federal and state constitutions to represent himself if he elects to do so; *State* v. *Townsend*, 211 Conn. 215, 218, 558 A.2d 669 (1989); but "where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imper-

fectly." *Faretta* v. *California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

It is evident from the record here that the defendant persistently refused to be represented by a lawyer at his trial. In essence, he insisted on being his own attorney and now complains that he had inadequate counsel. We conclude that the trial court properly found, pursuant to Practice Book § 961, that the defendant knowingly and intelligently waived his right to counsel.

## II

The defendant next claims that his impeachment by a larceny conviction that was subsequently reversed violated his federal and state constitutional rights to present a defense, to a fair trial and to due process of law. Prior to the defendant's trial in the present case, he had been convicted of larceny in the third degree. This conviction was on appeal at the time of his trial in the present case. Subsequent to this trial, his prior larceny conviction was reversed based on the absence of felonious intent. *State* v. *Varszegi*, 33 Conn. App. 368, 375, 635 A.2d 816 (1993), cert. denied, 228 Conn. 921, 636 A.2d 851 (1994) (defendant represented by counsel at trial but prepared own appellate brief).

We ruled on a substantially similar issue in *State* v. *Schroff*, 3 Conn. App. 684, 689, 492 A.2d 190 (1985). The sole distinction between *Schroff* and the present case is that in *Schroff* there is no indication that any of the convictions that were on appeal were eventually reversed. See also *State* v. *Biller*, 5 Conn. App. 616, 623, 501 A.2d 1218 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146, cert. denied, 478 U.S. 1005, 106 S. Ct. 3296, 92 L. Ed. 2d 711 (1986). In *Schroff*, we said "[t]he defendant . . . claims that it was error for the court to admit evidence of convictions which were on appeal. We adopt the majority rule which states that the trial

court 'has discretion to allow the use for impeachment of a conviction under appeal, although he must, of course, allow defense counsel to point out the pendency of an appeal to the jury. In exercising this discretion, the judge is free, although not required, to examine any readily available papers that may bear on the substantiality of the appeal.' . . . [T]he defendant elected not to inform the jury that the convictions were on appeal." (Citations omitted.) *State* v. *Schroff,* supra, 689.

The defendant here, like the defendant in *Schroff,* did not elect to advise the jury that his larceny conviction was on appeal. We do not know whether this was trial strategy or an oversight due to lack of trial experience. Even if it was the latter, it would avail the defendant nothing on appeal. It is simply an example of the hazards of self-representation discussed in part I.

The defendant argues that this claim raises constitutional issues. We do not agree. It is concerned solely with an evidentiary ruling on the admissibility of a prior conviction into evidence for purposes of impeaching the defendant's credibility. Calling it a constitutional issue will not make it one. *State* v. *Golding,* 213 Conn. 233, 240, 567 A.2d 823 (1989).

"It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985).

The defendant did not dispute that he attempted to escape. Rather, his case was based on a defense of necessity. All of his evidence, including his own testimony, dealt with that defense. Because that defense was never before the jury for its consideration (see part IV), the defendant's credibility played only a minor role

in the trial.[5] Accordingly, the defendant has not established that the trial court's evidentiary ruling, even if erroneous, was probably harmful to him.

Our cases have consistently held that impeachment by evidence of prior criminal convictions rests in the sound discretion of the trial court; *State* v. *Schroff*, supra, 3 Conn. App. 684; and the trial court's discretion will be upset by the court only if abuse of that discretion is demonstrated. *State* v. *Crumpton*, 202 Conn. 224, 229, 520 A.2d 226 (1987). The defendant has not demonstrated that the trial court abused its discretion.

The defendant urges that we decide this issue on the basis of the fact that the prior conviction was reversed on grounds implicating his factual innocence rather than on technical grounds. He cites two federal cases supporting this view. *Smith* v. *Collins*, 964 F.2d 483 (5th Cir. 1992); *Gaudin* v. *Shell Oil Co.*, 132 F.R.D. 178 (E.D. La. 1990). We do not find these authorities persuasive.

## III

The defendant next claims that the trial court violated his federal and state constitutional rights to present a defense by refusing to submit his defense of necessity to the jury. A defendant is entitled to a theory of defense charge if he is asserting a recognized legal defense. *State* v. *Rosado*, 178 Conn. 704, 707, 425 A.2d 108 (1979). The common law defense of necessity is preserved under the savings clause of General Statutes § 53a-4.[6] *State* v. *Messler*, 19 Conn. App. 432,

[5] The issue of the defendant's credibility was not moot, however. Any time a defendant takes the stand in his own defense, his credibility is subject to scrutiny. *State* v. *McClendon*, 199 Conn. 5, 12, 505 A.2d 685 (1986).

[6] General Statutes § 53a-4 provides: "The provisions of this chapter shall not be construed as precluding any court from recognizing other principles of criminal liability or other defenses not inconsistent with such provisions."

436–37, 439 n.5, 562 A.2d 1138 (1989). Allowance of the necessity defense in prison escapes mandates unique considerations. "To maintain order in state correctional facilities and court lockups, and to avoid an invitation for facile excuses to attempt escapes from custody, the application of the necessity defense to criminal escapes must be strictly interpreted." *State* v. *Woods*, 23 Conn. App. 615, 620, 583 A.2d 639 (1990).

The seminal case on this issue is *People* v. *Lovercamp*, 43 Cal. App. 3d 823, 831–32, 118 Cal. Rptr. 110 (1975). "In *Lovercamp*, the California court held that, in the context of criminal escape, a limited defense of necessity is available if: '(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) there is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) there is no time or opportunity to resort to the courts; (4) there is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and (5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.' " *State* v. *Woods*, supra, 23 Conn. App. 619. Connecticut adopted the *Lovercamp* test in *State* v. *Woods*, supra, 620–21.

The trial court reviewed the evidence on an objective basis. The defendant argues that a subjective basis should be used when deciding whether to submit this defense to the jury. He asks us to hold that, in applying the *Lovercamp* test, the court should consider the criteria according to the defendant's perception of the situation rather than as the facts actually were. It is inconsistent with the strict limitations of the necessity defense to determine their satisfaction from the defendant's subjective point of view.

In the present case, as in *Lovercamp*, the trial court objectively looked at the evidence and found that, although the defendant testified that he was threatened with substantial bodily injury, he had not reported the threat to prison authorities despite having three days to do so. The defendant also testified to other threats, none of which were reported to prison authorities. In addition, the trial court found that although the defendant was represented by counsel, to whom he had spoken at the jail, he failed to avail himself of the opportunity to resort to the court.

The trial court found that the defendant's medical complaints were not futile even though they were not answered to his satisfaction. The trial court found that the defendant's fear of a tuberculosis epidemic was not founded in fact. The defendant would have us believe that his fear of contracting tuberculosis was realized, as shown in a subsequent physical examination. In fact, the subsequent tests showed only that the defendant had been exposed to tuberculosis, not that he had contracted the disease.

The trial court did not address the fourth and fifth *Lovercamp* prongs because they are applicable only to completed escapes, and the defendant here was charged only with attempt to escape.

The trial court properly applied the *Lovercamp* factors and correctly concluded that the defendant had failed to demonstrate that he was entitled, as a matter of law, to a jury instruction on a defense of necessity.

## IV

In his final claim, the defendant argues that the trial court improperly admitted into evidence two prior convictions of failure to appear. The trial court denied the defendant's pretrial motion in limine seeking to bar the state's use of these convictions and allowed them to be admitted for impeachment purposes.

"As a rule, evidence that a criminal defendant has been convicted of crimes on a prior occasion is not generally admissible. . . . There are, however, several well recognized exceptions to this rule, one of which is that '[a] criminal defendant who has previously been convicted of a crime carrying a term of imprisonment of more than one year may be impeached by the state if his credibility is in issue.' " (Citations omitted.) *State* v. *Crumpton*, supra, 202 Conn. 228; *State* v. *Cooper*, 227 Conn. 417, 424, 630 A.2d 1043 (1993). By testifying on his own behalf, the defendant put his credibility in issue. "A defendant cannot both take the stand and be immune from impeachment." *State* v. *McClendon*, 199 Conn. 5, 12, 505 A.2d 685 (1986).

"Before admitting such evidence, however, the trial court should weigh the following factors: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime indicating untruthfulness; and (3) its remoteness in time." (Internal quotation marks omitted.) *State* v. *Pinnock*, 220 Conn. 765, 779–80, 601 A.2d 521 (1992).

"A trial court's decision denying a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Crumpton*, supra, 202 Conn. 229.

In part II, we addressed the first two factors of this test, prejudice and credibility, and concluded that the defendant had not shown that the trial court's evidentiary ruling was harmful. We conclude likewise with respect to the present claim. Because his defense of necessity was never before the jury for consideration, the defendant's credibility on this issue was not a major factor.[7] The defendant does not claim that his convic-

---

[7] Although the court did not ultimately charge the jury on the defense of necessity, it permitted the defendant to place his evidence concerning this defense before the jury.

tion for failure to appear were remote in time. We conclude that the trial court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.