[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner brings this petition for a writ of habeas corpus alleging that his criminal trial attorney, H. Jeffrey Beck, was ineffective in assisting him in that he (1) failed to prepare defense witnesses for their testimony; (2) failed to conduct a thorough cross-examination of the state's witnesses; (3) failed to call as witnesses, those helpful to the petitioner's defense, and (4) failed to maintain an adequate communication with the petitioner.
The petitioner was arrested in connection with an incident which was alleged to have occurred on July 5, 1994 in front of 511 Woodin Street in Hamden. The trial transcript (Petitioner's Exhibit 1) reveals that Margaret Troiano had taken her three aunts shopping and at about 5:15 p. m. was driving them home. As she approached Woodin Street from Thorpe Drive, preparing to turn right, her attention was drawn to a black male who was crossing at the intersection in front of her car. Although he had plenty of time to cross before her car approached the intersection he finished in front of her car as she approached him. She turned right onto Woodin Street and stopped across from her Aunt Josephine's house so that she had to cross the street. As her aunt did so, Toriano saw the black male who was proceeding in the same direction as she crossed the street to the side where her aunt's house was located. There was no other traffic in the area, neither cars nor pedestrians as she pulled away. Her aunt, before she could enter her front door was pulled backwards from the steps leading to the door by a black male pulling at her pocketbook which draped from her shoulder by a strap. She fell to the ground and he was able to pull the pocketbook away from her. Detectives Remillard and Riordan canvassed the neighborhood for a pocketbook or a suspect without success. Detective Riordan did observe a footprint in the wet mud at the stream between the project where the petitioner lived and 511 Woodin Street. Both Troiano and her aunt gave descriptions of the black male they had seen and whom her aunt said took her pocketbook and on July 6, 1994 both were shown eight (8) photographs separately. Troiano made a positive identification and her aunt said the photograph of the petitioner "looked like the one." Detective Peter Massey CT Page 713 testified that the descriptions given by the two women matched the petitioner and that both identified the photograph of the petitioner, Troiano without hesitation. Both women, when they viewed the petitioner at his criminal trial in person, were positive he was the one seen on Woodin Street on July 5, 1994. Doreen Boykin, a cashier at X-Banker in New Haven and who knew the petitioner previously from picking up his welfare check, testified that the petitioner came in on July 8, 1994 to pick up his welfare check and after he left she found a woman's wallet, credit cards, driver's license in a trash can in the bank. They were identified as the property taken on July 5, 1994 on Woodin Street.
The petitioner testified in his criminal trial. He was familiar with Woodin Street and had waxed a car for Josephine's husband in June 1994 and had met Josephine on that occasion. He had returned on another occasion and was introduced to their next door neighbor for whom he mowed her lawn. He testified that he was at home on July 5, 1994 until after dark about 8:00 p. m.. He admitted having the contents of the pocketbook located in the trash can at X-Banker which he had found on a path leading from his house towards Woodin Street. He threw the contents of the pocketbook into the trash can after being unable to use the ATM card because he couldn't ascertain the code. He doesn't know how all the contents located were there because he only found two cards. He claimed Jimmy Evans admitted to him he had been the one who snatched the pocketbook. His mother testified but was uncertain which robbery the police had called on when the petitioner was home and his brother testified about waxing the car for Josephine's husband. Josephine's husband testified that he did have two black males wax his car in 1994 but didn't recognize the petitioner as either one of them and was positive neither had seen Josephine on that occasion.
At the Habeas hearing the petitioner testified that he was dissatisfied with the way Beck cross-examined the victim by failing to get her to admit that she had seen the petitioner before the incident of July 5, 1994. He also felt that Beck failed to prepare his mother, brother and himself for their testimony and failed to call the next door neighbor of the victim to corroborate the incident in which he met her and mowed her lawn. He stated that he didn't know her name and that she had moved prior to his trial. He claimed that Beck continued to question the victim even though she was crying as she testified. He also complained that the investigator in the Public Defender's CT Page 714 Office should not have been involved in his case because he was biased against him.
Attorney Beck testified that he was not aware of any conflict the investigator had with his client and had never been asked to interview any neighbor of the victim. He acknowledged that the defense in the case was alibi and a misidentification. For that reason he prepared his client, his mother and brother for their testimony. He recalled that his mother was a nice woman but did have a problem with dates. The petitioner did claim that one Jimmy Evans was the perpetrator from the beginning. Evans was serving a sixty (60) years sentence: He felt that he had aggressively cross-examined the victim as to the lack of opportunity to make a valid identification because of the quickness of the time that elapsed during the taking of the pocketbook. The transcript of his cross-examination bears this out which includes the difference in certainty as to the victim's identification of the photographic array to the in-court identification. Likewise this portion of the transcript does not corroborate that the victim was crying at the time but rather that her responses were firm and complete. The victim's testimony corroborates her husband's testimony that she had not seen the person or persons who waxed the car.
A successful petitioner must show that there is reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. Copas v.Commissioner, 234 Conn. 139 (1995); Strickland v. Washington,466 U.S. 668, 694. The petitioner has failed to show counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 359.
The major issue for the state was identification which had to overcome the alibi evidence offered. The out-of-court identifications, although hearsay, are admissible to support the in-court identification. State v. McClendon, 199 Conn. 5, 10. It is highly unlikely that the result could be different with evidence by the petitioner that he was in fact in possession of the credit cards of the victim three days later even though he claimed that he found them while he testified that he threw them in the trash can at the bank when he could not ascertain the code of the ATM card, adds to rather than weakens the identification of the perpetrator two days before such event.
For the above reasons the petition is denied. CT Page 715
Thomas H. Corrigan Judge Trial Referee