STATE OF CONNECTICUT *v.* PAUL COPP
(AC 17373)

Foti, Schaller and Spear, Js.

Argued June 3—officially released September 7, 1999

*Neal Cone*, assistant public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Richard Colangelo*, assistant state's attorney, for the appellee (state).

Opinion

FOTI, J. The defendant, Paul Copp, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d and operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. On appeal, he claims that the trial court improperly (1) permitted him to represent himself at trial, (2) denied his request for a brief continuance or recess and (3) deprived him of a fair trial when it denied his motion for judgment of acquittal in the presence of the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant, employed as a limousine driver, drove his employer's Cadillac Fleetwood to a Fairfield restaurant on September 13, 1995, at approximately 4 p.m. After consuming at least eight vodka drinks at one establishment and four at a second location, he proceeded south in the limousine on the Merritt Parkway at approximately 9:15 p.m., speeding and driving erratically. Drivers of two other vehicles observed the defendant as the driver and sole occupant of the limousine. After passing both vehicles, the limousine crossed

the median and collided with two cars in the north-bound lanes. A woman in one of the cars was badly injured. Shortly thereafter, the drivers of the two south-bound vehicles that the defendant had passed saw the limousine at the accident scene. The defendant was lying on the floor in the front seat area. No one else was in the vehicle. Other witnesses to the accident observed only the defendant in his vehicle. Both the driver's and passenger's doors were jammed shut and could not be opened. Firefighters had to cut through the frame of the limousine to extricate the defendant. The car struck by the limousine was so badly damaged that the rescue squad was forced to dismantle it to extricate the injured woman. The defendant's blood alcohol content was 0.16.

I

The defendant claims that the trial court improperly concluded that he knowingly and voluntarily waived his right to counsel and, therefore, improperly permitted him to represent himself at trial. We disagree.

Before the jury began hearing evidence, the defendant informed the trial court that he wanted to represent himself and to discharge James P. Ginocchio, the public defender assigned to represent him. The defendant claimed that he had lost confidence in Ginocchio's ability to represent him because of his "constant attempt to have me plea bargain as opposed to thoroughly investigate the case," and because Ginocchio knew "the brother of one of the key witnesses who is another attorney and close to [the public defenders]." Defense counsel responded that his office had investigated the case and that he was unbiased in all respects. The following colloquy took place between the trial court and the defendant.

"The Court: Mr. Copp, there are circumstances, some circumstances under which the defendant is permitted

to represent himself, and I'll ask you some questions in a moment if that is your desire to represent yourself, but understand this, I would not be granting you a continuance. We would go forward with the trial today, and I would appoint Mr. Ginocchio as standby counsel if I did allow you to represent yourself, so that you could turn to Mr. Ginocchio if at any time you need his legal experience and assistance, but let me speak more generally for just a moment. I have known Mr. Ginocchio for I am going to say fifteen to eighteen years, about that time, as a public defender. I've known him to be competent and zealous in his representation at all times. There are times when a lawyer such as Mr. Ginocchio has to speak candidly to his client about the cases, about the strengths of the cases and the weaknesses in the cases, about the desirability to plea bargain a case. That is part of Mr. Ginocchio's duty. That is part of his job. . . . [T]hough once a client has rejected a plea bargain, I know Mr. Ginocchio habitually is a very capable, zealous advocate for his client's cause. I have no reason to suspect he would be anything other than that at this trial. Do you understand what I am telling you?

"The Defendant: I understand what you have said.

"The Court: There is an old saying, 'Don't shoot the messenger.' Mr. Ginocchio may be giving you bad news. He may be telling you facts about the case that his investigation has revealed or his legal skill has revealed, [which] he feels [he must] share with you. Just because it is incumbent upon him to share these viewpoints with you does not mean that he is working against you, and it does not mean that he is willing to do anything other than to effectively represent you. Do you understand that?

"The Defendant: I understand what you are saying."

The defendant refused, however, to reconsider his request to discharge counsel and to proceed pro se. The trial court then engaged in a lengthy and comprehensive canvas of the defendant, pursuant to Practice Book § 961, now § 44-3. During the canvas, the defendant represented that he was sixty years of age, had attended college and had postgraduate training in psychology, and had recently "[taken] a civil case through the Superior Court in the state of Connecticut, the court of appeals in the state of Connecticut, the Supreme Court of the state of Connecticut, the [United States Court of Appeals for the Second] Circuit in New York and to the Supreme Court in Washington." He represented that he had no legal training or experience beyond that involved in his pro se handling of that case.

The trial court asked the defendant if he understood that the prosecutor had "significant training and experience." The defendant replied, "I understand he is an attorney." The trial court then asked the defendant if he understood that the prosecutor's training and experience would place the defendant "at a disadvantage." The defendant acknowledged that "[the prosecutor] certainly has more knowledge than I do." The defendant admitted that he did not know the rules of law and evidence very well, but that he could bring himself "up to speed" if granted a three week continuance. The trial court reminded the defendant that it was not going to grant him any continuances at this late point in the proceedings.

When asked by the trial court if he knew how to make and preserve objections to evidentiary rulings, the defendant replied, "I think so. You just object." When asked if anything in his work history might enable him to represent himself effectively, the defendant replied, "As a businessman, I've been involved in a number of court cases, and that would be the only thing that I could bring to mind."

The trial court then asked the defendant if he understood the nature of the charges and proceedings. The defendant replied, "I believe that I do." The trial court further inquired if the defendant understood that the assault charge was a felony and that the charge of operating a motor vehicle while under the influence of liquor was a misdemeanor. He replied that he understood the nature of the charges. He also acknowledged that he understood the essence of what the state had to prove with respect to the charges. With respect to the misdemeanor charge, the defendant stated that he understood that "[the prosecution has] to prove that I was driving, and I was driving while intoxicated and that's primarily it."

With respect to the assault charge, the trial court inquired: "Do you understand, with respect to the charge of assault with a motor vehicle, that the state also has to prove that while you were driving, as a result of your being intoxicated, that you did cause serious physical injury to another person? Do you understand that is an element of what the state has to prove in the charge of assault with a motor vehicle?" The defendant responded, "Yes." The defendant was asked if he understood that if convicted of the assault charge he faced a maximum sentence of five years imprisonment plus a maximum fine of $5000, and that if he was convicted of the charge of operating a motor vehicle while under the influence of liquor he faced a maximum sentence of six months imprisonment, which could be imposed consecutively, and a fine of $1000. The defendant acknowledged that he did.

The trial court again asked the defendant: "Do you understand that I believe there are significant dangers and disadvantages that are inherent in self representation?" The defendant responded, "Yes, I understand you." When the trial court asked the defendant if it had explained the dangers and disadvantages to him, the

defendant replied, "Yes." The trial court then inquired: "Do you still wish to represent yourself?" The defendant replied, "Yes."

At that point, the trial court heard from Ginocchio and the prosecutor and, relying on *State* v. *Varszegi*, 36 Conn. App. 680, 684, 653 A.2d 201 (1995), aff'd, 236 Conn. 266, 673 A.2d 90 (1996), noted that the relevant inquiry was not whether the defendant possessed the skill and experience of an attorney, but whether he had knowingly exercised his right to represent himself. The trial court then made its final ruling: "All right. I am going to allow Mr. Copp to represent himself. I believe that he adequately understands, appreciates the dangers and the risks of self-representation, but under the Practice Book section I believe he has passed the canvas that I would require. I am, however, going to appoint Mr. Ginocchio as standby counsel for Mr. Copp in the event Mr. Copp feels he needs assistance or in the event that he reverses his decision. Again, Mr. Copp, I believe this is an extremely unwise decision to represent yourself. It is unwise even if you had legal training and experience. The fact that you do not makes your decision especially precarious. However, I will allow your decision to represent yourself. However, there will be no continuance for the purpose of representing yourself. I've made that clear from the outset."

The defendant then renewed his request for a continuance, which the trial court denied, noting that jury selection had been completed eleven days earlier and that this was an ample time frame within which the defendant could have familiarized himself with the case.

At trial, the defendant, acting pro se, cross-examined witnesses, and, when he offered testimony in his defense, Ginocchio, as standby counsel, conducted the direct examination. Ginocchio also assisted the defendant during the prosecution's cross-examination of the

defendant. The defendant moved for judgment of acquittal on three occasions and delivered closing argument to the jury.

There is no question that a defendant in a criminal matter has the right to represent himself and waive the assistance of an attorney. *State* v. *Day*, 233 Conn. 813, 820, 661 A.2d 539 (1995). He properly exercises this right of self-representation by knowingly and intelligently waiving his right to representation by counsel. Id., 821. Several criteria must be met, to the satisfaction of the trial court, before a defendant in a criminal case may properly be allowed to proceed pro se, as set forth in Practice Book § 44-3. *State* v. *Webb*, 238 Conn. 389, 429, 680 A.2d 147 (1996). The waiver of counsel will be allowed only after the trial court makes a thorough inquiry and is satisfied that the following four conditions are met: The defendant (1) has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel if he is so entitled, (2) possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself, (3) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case, and (4) has been made aware of the dangers and disadvantages of self-representation. Practice Book § 44-3.

During oral argument before this court, the defendant did not argue that the canvas was inadequate. Rather, he argued that his waiver was not adequately shown to be voluntarily or knowingly made. His claim is that because he had an incorrect negative feeling about his appointed counsel and because he misapprehended that he could not get a fair trial with that attorney, the trial court should not have allowed his waiver. Under these circumstances, he claims that he should have been

forced to continue with counsel. The defendant's claim lacks merit.

The fact that the defendant's decision to represent himself was misguided or based on his erroneous perceptions of appointed counsel or his own ability to defend himself and resulted in a conviction is of no consequence. We review the record to determine whether the trial court properly concluded that the defendant was competent to make the decision to waive counsel, and that his decision was made in a knowing, voluntary and intelligent fashion. *State* v. *Day*, supra, 233 Conn. 822.

The defendant was adequately made aware of the nature of the proceedings, and the dangers and disadvantages of waiving counsel and representing himself. The record affirmatively shows that the defendant was literate, competent and understanding. He adamantly refused to be represented by counsel, was allowed to represent himself and now complains that he had inadequate counsel. See *State* v. *Varszegi*, supra, 36 Conn. App. 685. We conclude that the trial court properly determined that the defendant voluntarily and knowingly waived his right to counsel, and the record reveals that it was done in an intelligent manner.

II

The defendant next claims that he was deprived of his constitutional rights of due process and self-representation because the trial court abused its discretion in denying him a ten minute recess before presenting closing argument to the jury. The defendant also claims that this issue was distinctly raised at trial, but, in the event that it was not properly preserved, he seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[1] Our review of the record discloses that this claim was not properly preserved at trial.

---

[1] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met:

We will not review this claim because it lacks constitutional magnitude involving the violation of a fundamental right. Before the state gave its closing argument, the defendant requested a ten minute continuance to "gather [his] thoughts" after the state's argument and before his closing. Further, we note that the trial court recessed the proceedings before the closing arguments. We conclude that the defendant's wish "to gather his thoughts" does not amount to a claim of constitutional magnitude. The defendant is trying to robe a nonconstitutional claim in constitutional garb. We are not persuaded.

## III

The defendant's final claim is that the trial court improperly denied his motion for judgment of acquittal in the presence of the jury.

The defendant seeks *Golding* review of this unpreserved claim, but has failed to provide this court with an adequate record for review.[2] We, therefore, decline to afford review.

The judgment is affirmed.

In this opinion the other judges concurred.

---

(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 239–40.

[2] The defendant makes a factual assumption that the jury was in the courtroom when the trial court denied his motion for judgment of acquittal. The transcript shows that the court excused the jury and requested that it "report to the jury assembly room." Thereafter, the court inquired of the parties, "Anything before we recess?" At this point, the record is insufficient to establish that the jury was still present in the courtroom. We cannot and will not speculate as to this point.